**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

————————————————————x

YEKUSIEL SEBROW, an individual; on behalf
of himself and all others similarly situated,

                      Plaintiffs,

       vs.

FULTON, FRIEDMAN, & GULLACE, LLP, a
New York Limited Liability Partnership;
THOMAS MCCARTHY, individually and in
his official capacity; JASON P. VERHAGEN,
individually and in his official capacity;
MARIA J. REED, individually and in her
official capacity; PATRICIA A. BLAIR,
individually and in her official capacity;
DANTE GULLACE, individually and in his
official capacity; CYNTHIA L. FULTON,
individually and in her official capacity;
ALLAN J. FRIEDMAN, individually and in his
official capacity; and JOHN AND JANE DOES
NUMBERS 8 THROUGH 25,

                      Defendants.

————————————————————x

CASE NO.:  1:10-cv-05897-DLI-RER

**MEMORANDUM OF LAW IN SUPPORT**
**OF UNOPPOSED MOTION FOR FINAL**
**APPROVAL OF CLASS SETTLEMENT**
**AGREEMENT AND RELEASE**

        Plaintiff, YEKUSIEL SEBROW ("Plaintiff"), individually, and as representative of the

class of persons defined herein ("Settlement Class"), by and through his undersigned counsel

respectfully submits this Memorandum of Law in Support of Final Approval of the Class

Settlement Agreement and Release ("Agreement"), which Plaintiff and Defendant, FULTON,

FRIEDMAN & GULLACE, LLP ("Defendant"), entered into on December 7, 2012. This Court

preliminarily approved the Agreement on March 8, 2013. [Doc. 70].

        The Court is advised that on April 29, 2013, notice of the settlement of this action was

mailed to 21,171 Settlement Class members by First Class, Inc., the settlement administrator.

[Horn Affid, ¶ 9(a), Exh. A]. As of the date of this filing, a total of 1938 notices were returned by

the United States Postal Service as undeliverable with no forwarding address or further

information; there were also a total of 384 notices returned by the United States Postal Service with a new address, which were successfully re-mailed. [Horn Affid., ¶ 9(b), Exh. A].

In total, 19,233 Settlement Class members received notice of the class settlement of which 17 Settlement Class members requested exclusion from the settlement (0.088%), while only 2 Settlement Class members objected to the terms of the settlement (0.010%). [Horn Affid., ¶¶ 9(c) and 10, Exh. A].

## I.    OVERVIEW OF THE CASE

A.    Plaintiff's initial complaint alleges that Defendant engaged in false, deceptive, and misleading collection practices, and thereby violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA"). On September 2, 2011 Plaintiff filed an amended complaint. [Doc. 46]. Plaintiff's First Amended Complaint alleges that the sole person listed at the top of Defendant's law firm collection letter (i.e., "Tom McCarthy") is not licensed to practice law in the State of New York or any other state, which Plaintiff contends violates 15 U.S.C. §§1692e(3) and 1692e(10). [Doc. 46, Exh. A]. Plaintiff's First Amended Complaint further alleges that Defendant prepares and files computer generated lawsuits against consumers in the State of New York and that those lawsuits that do not any meaningful review or involvement from, a licensed attorney in violation of 15 U.S.C. §§ 1692e(3) and 1692e(10). [Doc. 46, Exh. B].

After engaging in extensive arms-length discussions over several months, the Parties reached an agreement to settle the claims of Plaintiff and the Settlement Class, as set forth in the Agreement, on file with the Court. [Doc. 62-2]. This Court preliminarily approved the Agreement on March 8, 2013. [Doc. 70]. Defendant served the notice required by the Class Action Fairness Act. [Doc. 72]. As demonstrated below, the Agreement is now ripe for this Court's final approval.

2

## II.    ADMINISTRATION OF THE SETTLEMENT

### A.    The Preliminary Approval Order

In the Preliminary Approval Order (the "Order"), the Court specifically found that the proposed terms of the settlement satisfied all of the elements of Federal Rule of Civil Procedure 23(a) and 23(b)(3). The Order preliminarily certified a class defined as:

> (i) all persons in the State of New York; (ii) to whom FULTON FRIEDMAN sent a written communications in the form attached as ***Exhibit A*** or ***Exhibit B*** to Plaintiff's First Amended Complaint; (iii) in an attempt to collect a debt that was allegedly incurred for personal, family, or household purposes; (iv) during the period beginning December 17, 2009 and ending January 18, 2011. [Doc. 70].

The Order established a procedural framework for the final approval of the settlement. The Order, which was later modified by the Court's subsequent order on April 5, 2013, required the Parties to cause notice to be mailed to the members of the above defined Class, and further set deadlines and procedures for Class members to submit claim forms, request exclusion from the Class and/or to object to the settlement, and set a date and time for the fairness hearing.

### B.    The Sending of Class Notice

On April 29, 2013, First Class, Inc., the settlement administrator selected by the Parties, caused the actual notice to be sent by first class mail to approximately 21,171 Settlement Class members. [Horn Affid., ¶ 9(a), Exh. A]. A total of 1,938 notices were returned by the United States Postal Service as undeliverable with no forwarding address or further information; there were also a total of 384 notices returned by the United States Postal Service with a new address, and such notices were successfully re-mailed. [Horn Affid., ¶ 9(b), Exh. A].

In total, 19,233 Settlement Class members received notice of the class settlement of which 17 Settlement Class members requested exclusion from the settlement (0.088%), while

only 2 Settlement Class members objected to the terms of the settlement (0.010%). [Horn Affid.,
¶¶ 9(c) and 10, Exh. A].

    **C.**    ***The Value of the Settlement***

    The Court previously considered the terms of the settlement in entering the Order, which
are as follows:

    (1)    <u>Relief to Plaintiff</u>. Defendant shall pay $1,000.00 to Plaintiff for his statutory
damages pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i), plus an additional $1,500.00
in recognition for his services to the Settlement Class.

    (2)    <u>Settlement Class Recovery</u>. Defendant will create a class settlement fund of
$5,443.00, which represents the maximum class recovery permitted under the
FDCPA (i.e. 1% of Defendant's net worth), which shall be paid as a *cy pres*
payment to one or more charitable organizations without any religious or political
affiliations. Subject to the Court's approval, Plaintiff proposes that the recipient of
the *cy pres* payment should be the New York Legal Assistance Group, which is a
statewide organization who provides assistance to low-income and vulnerable
New York residents on issues involving, *inter alia*, consumer fraud, debt
collection, and consumer finance.

    (3)    <u>Attorneys' Fees and Costs</u>. Subject to the Court's approval, Defendant shall pay
$90,000.00 to counsel for Plaintiff and the Settlement Class as attorneys' fees and
costs incurred with respect to the Litigation. This payment of attorney's fees and
costs is separate from, and in addition to, the foregoing damages Defendant has
agreed to pay Plaintiff and the Settlement Class.

    (4)    The cost of administering the settlement, including providing notice to the Class,
is also separate from, and in addition to, the foregoing damages Defendant has
agreed to pay Plaintiff and the Settlement Class.

    Of the 19,233 Settlement Class members who received notice, only 17 (0.088%)
submitted a request for exclusion and 2 (0.010%) voiced an objection to the settlement. One
objection was based on the fact that the objector's credit was ruined and the other objection was

based on the objector's view that all 22,000 class members should be allowed to decide to what entity the *cy pres* award should be paid. When the arcane objections, coupled with the very limited number of opt-out requests (0.088% of the class), are considered, the Court should view this as a significant endorsement of the settlement by the Class.

## III.    THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT

The Court should grant final approval to the settlement. The Class meets all the requirements of Fed. R. Civ. P. 23 and the Agreement is fair and reasonable.

### A.    *The Class Meets All the Requirements of Fed. R. Civ. P. 23(a)*

#### 1.    Rule 23(a)(1) - The Settlement Class Is So Numerous That Joinder Of All Members Is Impracticable.

Fed. R. Civ. P. 23(a)(1) requires the class be "so numerous that joinder of all members is impracticable." The Second Circuit has recognized that as few as 70 class members is sufficient to satisfy the "numerosity" requirement of Rule 23(a)(1). *See Korn v. Franchard Corp.*, 456 F.2d 1206 (2d Cir. 1972) (70 class members sufficient); see also, *Mathis v. Bess*, 138 F.R.D. 390, 393 (S.D.N.Y. 1991) (joinder impracticable based solely on the fact that class had 120 members); *see also*, Newberg on Class Actions, 3rd Ed. Sec. 3.05, at 3-25. There were 19,233 individuals who met the Class definition, each of whom were sent and received individual notice of the settlement via U.S. Mail, pursuant to the Order. The number of Class members in this case plainly satisfies the numerosity requirement of Rule 23(a)(1).

#### 2.    Rule 23(a)(2) - The Claims Of The Settlement Class Arise From Common Questions Of Law And Fact.

Fed. R. Civ. P. 23(a)(2) requires the existence of "questions of law or fact common to the class." The "commonality" requirement of Rule 23(a)(2) is usually satisfied where the class members' claims arise from a common nucleus of operative fact. *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 166-167 (2d Cir. 1987) (common defenses applicable to whole class

5

satisfied commonality requirement); see also, *Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) citing *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

The Settlement Class members share a common fact: Defendant mailed Plaintiff and each Settlement Class Member the same computer-generated, <u>standardized</u>, collection letter and lawsuits in connection with Defendant's attempt to collect a debt. Thus, Plaintiff and the Settlement Class Members share a common issue of law -- namely, whether Defendant's standardized collection letter and lawsuits violated the FDCPA. These common issues of fact and law satisfy Rule 23(a)(2).

### 3.    Rule 23(a)(3) - Plaintiff's Claims are Typical Of the Claims Of The Settlement Class.

Fed. R. Civ. P. 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The "typicality" requirement of Rule 23(a)(3) is satisfied for the reasons that the "commonality" requirement of Rule 23(a)(2) is met. *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). See also, *Robidoux v. Celani*, 987 F.2d 931, 936-937 (2d Cir. 1993) (if same conduct is directed toward named plaintiff and putative class members, minor factual differences will not defeat typicality).

Here, Plaintiff's claims share the same issues of fact and law as the Settlement Class members. Indeed, Defendant mailed Plaintiff and each Settlement Class Member the same computer-generated, <u>standardized</u>, collection letter and lawsuit in connection with Defendant's attempt to collect a debt. Thus, Plaintiff and the Settlement Class Members share a common issue of law -- namely, whether Defendant's standardized collection letter and lawsuit violated the FDCPA. Accordingly, Rule 23(a)(3) is plainly satisfied.

**4.      Rule 23(a)(4) - Plaintiff and Class Counsel Has Fairly And
Adequately Protected The Interests Of The Settlement Class.**

Fed. R. Civ. P. Rule 23(a)(4) requires that "the representative parties will fairly and

adequately protect the interest of the class." This rule involves two considerations: (1) whether

the Plaintiff's attorneys are properly qualified and experienced to conduct the litigation; and (2)

whether the Plaintiff has any interests antagonistic to the class. *General Tel. Co. v. Falcon*, 102

S.Ct. 2364, 2370, n.13 (1982). Attached hereto are the affidavits of Class Counsel, William F.

Horn, Robert L. Arleo, and Abraham Kleinman, which set forth their experience in cases

involving complex issues and class action litigation. Additionally, Plaintiff has no interests,

which are antagonistic to the Settlement Class Members. Therefore, the named Plaintiff and his

counsel satisfy the adequacy of representation requirement of Rule 23(a)(4).

**B.      *The Class Meets All The Requirements of Fed. R. Civ. P. 23(b)(3)***

Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) if "the court finds that the

questions of law or fact common to class members predominate over any questions affecting

only individual members, and that a class action is superior to other available methods for fairly

and efficiently adjudicating the controversy." For the reasons set forth below, both of these

requirements are satisfied in the present case.

**1.      Common questions predominate over individual issues.**

In order for common questions of law or fact to predominate over individual issues for

purposes of Rule 23(b)(3), common issues must constitute a significant part of the individual

cases. *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). Courts "generally

focus on the liability issues in deciding whether the predominance requirement is met, and if the

liability issue is common to the Class, common questions are held to predominate." *In re

Alexander Grant & Co. Litigation*, 110 F.R.D. 528, 534 (S.D. Fla. 1986); see also, *Dura-Built*

*Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 89 (S.D.N.Y. 1981). In the present case, a common issue of fact – an identical, computer-generated, collection letter and lawsuit mailed by Defendant to Plaintiff and the Settlement Class Members – predominates over any individual issues relating to Class members. Also, a common issue of law – whether Defendant's letters violated the FDCPA – predominates over any individual issues relating to each Settlement Class Member. Importantly, no actual damages were sought in the lawsuit; instead, only statutory damages were sought and they are readily calculable and apply equally to the entire class. Thus, Rule 23's predominance requirement is satisfied.

<b>2.     A Class Action is Superior to Other Methods of Resolving<br>This Matter.</b>

In addition to the predomination of common questions of law or fact, the class action must be the superior method to resolve the controversy to satisfy fully the requirements of Rule 23(b)(3). *Labbate-D'Alauro v. GC Servs. Ltd. Pshp.*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996). Class actions are the superior method for resolving controversies when the main objectives of Rule 23 are served; namely, the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications. *Id.* citing *Califano v. Yamasaki*, 442 U.S. 682 (1979). The Court is required to determine the best available method for resolving the controversy in keeping with "judicial integrity, convenience and economy." *Id.*(citations omitted). It is appropriate for the court to consider the "inability of the poor or uninformed to enforce their rights and the improbability that large numbers of class members would possess the initiative to litigate individually." *Id.* (internal quotes and citations omitted). "Class actions are often the most suitable method for resolving suits to enforce compliance with consumer protection laws because the awards in an individual case are usually too small to encourage the lone consumer to file

8

suit." *Id.* (internal quotes and citations omitted).

Here, given the large number of individual lawsuits that would be required if a class were not certified, a class action presents a superior method to fairly and efficiently adjudicate all of the claims of the Settlement Class in this case, within the meaning of Rule 23(b)(3). To the extent any Settlement Class members wished to pursue any such individual claim, they were free to exclude themselves from the Settlement Class under Rule 23(b)(3). Notably, only 17 Settlement Class Members -- i.e., 0.088% of the Settlement Class -- elected to opt-out of the Settlement Class thereby preserving their individual legal claims, while only two Settlement Class Members -- i.e., 0.010% of the Settlement Class --  voiced an objection, albeit somewhat arcane, to the settlement.

C.      **The Court Should Grant Final Approval to the Agreement Because It Is Fair, Reasonable, and Adequate**

"The settlement of a class action requires court approval." *In re Global Crossing Securities and ERISA Litigation*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004). "If the [proposed settlement] would bind class members, the court may approve it only after a hearing and finding it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C). "As a general policy matter, federal courts favor settlement, especially in complex and large-scale disputes, so as to encourage compromise and conserve judicial and private resources." *In re Global Crossing*, 225 F.R.D. at 455.

In evaluating a settlement, the court must consider the "substantive terms of the settlement compared to the likely result of a trial." *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983). In the Second Circuit, courts "examine the fairness, adequacy, and reasonableness of a class settlement according to the . . . [following] factors . . . :  (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the

9

proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the

risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7)

the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of

the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the

settlement fund to a possible recovery in light of all the attendant risks of litigation." *Wal-Mart*

*Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) (citations omitted). Application

of these factors confirms that the Court should approve the Settlement.

1.      ***The Complexity, Expense, and Likely Duration of Litigation/The Risks of
Establishing Liability/The Risks of Establishing Damages/The Risks of
Maintaining the Class Action Through Trial.***

The likelihood of success for the class members if they proceeded to trial is uncertain.

The class claims and defenses involve complex legal issues and Defendant has raised several

defenses to the class claims, which Defendant avers would ultimately defeat the claims of the

putative class. Settlement eliminates any further risk and expense for the Parties. Considering the

potential risks and expenses associated with continued prosecution of the case, the probability of

appeals, the certainty of delay, and the ultimate uncertainty of recovery through continued

litigation, the proposed settlement is fair, reasonable, and adequate.

2.      ***The Stage of the Proceedings and Amount of Discovery Completed.***

Considering the disputed issues between the Parties are legal, *not* factual, in nature, and

that the Parties have exchanged information and documents concerning Plaintiff's allegations,

Defendant's defenses, and potential damages, the Parties have exchanged sufficient information

to make an informed decision about settlement. *See, Linney v. Cellular Alaska Partnership*, 151

F.3d 1234, 1239 (9th Cir. 1998).

**3.** **_Defendant's Ability To Withstand A Greater Judgment/The Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery/The Range Of Reasonableness Of The Settlement Fund To A Possible Recovery In Light Of All The Attendant Risks Of Litigation._**

The FDCPA limits class damages to the lesser of $500,000 or 1% of the defendant's net worth. 15 U.S.C. § 1692k(a)(2)(B). Here, Defendant's class liability is capped at $5,443.00 and Plaintiff was able to negotiate a class damage award in that amount, which represents 100% of the maximum relief available to the class. Moreover, a trial in this case would be expensive and lengthy and continued litigation could have possibly depleted Defendant's resources to pay any judgment or possible future settlement making early settlement even more valuable to the proposed class members. Considering the uncertainties of trial, and the possible difficulty in ultimately proving liability against Defendant, the proposed settlement is clearly fair, reasonable, and adequate. The settlement was negotiated at arm's length by experienced and capable Class Counsel, who recommend its approval. As proven by the affidavits attached to Plaintiff's motion for preliminary approval, Class Counsel are experienced consumer class action lawyers and well qualified to assess the prospects of their case and to negotiate a favorable resolution for the Settlement Class. [Horn Affid., ¶¶ 1-9; Arleo Affid., ¶¶ 1-9; Kleinman Affid., 1-7].

**D.** **_The Settlement Was Not The Product Of Fraud Or Collusion._**

The Parties extensively negotiated the proposed Settlement at arm's-length over the course of several months. Plaintiff did not use the class action procedure to gain a more beneficial settlement for himself. Plaintiff's $2,500.00 payment is justified by the settlement of his individual claims and by his demonstrated willingness to serve as the Class Representative. Moreover, Class Counsel did not use the class action procedure to garner a larger monetary settlement than would otherwise have been warranted.

IV.    **PLAINTIFF IS ENTITLED TO RECOVER HIS ATTORNEYS' FEES AND LITIGATION EXPENSES**

A.    *The FDCPA Requires Payment of Reasonable Attorneys' Fees & Costs to Successful Plaintiffs*

Under the FDCPA, the prevailing plaintiff is entitled to "a reasonable attorney's fee as determined by the court."

> [A]ny debt collector who fails to comply with any provision of this title...is liable to such person in an amount equal to the sum of ...actual damages, ... [statutory damages], ... and in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1692k(a)(3). Likewise, the Second Circuit holds that the FDCPA "mandates an award of attorney's fees…" *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991) citing *Pipiles v. Credit Bureau of Lockport*, 886 F.2d 22, 28 (2d Cir. 1989); *Emanuel v. American Credit Exchange*, 870 F.2d 805, 809 (2d Cir. 1989). "Given the structure of the section, attorney's fees should not be construed as a special or discretionary remedy; rather, the…[FDCPA] mandates an award of attorney's fees as a means of fulfilling Congress's intent that the [FDCPA] should be enforced by debtors acting as private attorneys general." *Id.*

The United States Supreme Court has encouraged a consensual resolution of attorney's fees as the ideal toward which litigants should strive. In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the United States Supreme Court said: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Id.* at 437. *Accord In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568-70 (7th Cir. 1992) (market factors, best known by the negotiating parties themselves, should determine the quantum of attorneys' fees). It is widely recognized that fee agreements between plaintiffs and defendants are urged. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we

12

encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees.").

Given the reliance of our legal system on private litigants to enforce substantive provisions of law through class actions, attorneys providing the essential enforcement services must be provided incentives comparable to those negotiated in the private bargaining that takes place in the legal marketplace, as it would otherwise be economical for defendants to practice injurious behavior. *See, Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326 (1980). It has therefore been urged (most persistently by Judge Richard Posner of the Seventh Circuit) that in defining a "reasonable fee" in such representative actions, the law should "mimic the market." *See e.g., Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998).

Here, the Parties avoided the possibility of a "second major litigation" by negotiating an agreement with respect to Class Counsel's attorney's fees and costs to be awarded. Thus, the Court need not guess what the "market factors" as the Parties, through able and experienced counsel, have done so through their extensive negotiations.

> **B.    *Plaintiff's Reasonable Attorney Fees, Costs, and Expenses are Based Upon a Lodestar Calculation***

The FDCPA requires a debt collector to pay the costs and reasonable attorney's fees of a successful consumer litigant.  Any debt collector who fails to comply with any provision of 15 USCS §§ 1692, *et seq.* with respect to any person is liable to such person in an amount equal to the sum of --

> in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. §1692k(a)(3). The U.S. Supreme Court has established a guideline for determining the amount of a reasonable fee:

> The most useful starting point for determining the amount of a
> reasonable fee is the number of hours reasonably expended on the
> litigation multiplied by a reasonable hourly rate.  The calculation
> provides an objective basis on which to make an initial estimate of
> the value of a lawyer's services.

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Third Circuit applies the *Hensley* formula,
commonly referred to as the "lodestar." *See*, *Millea v. Metro-North Railroad Co.*, 658 F.3d 154,
166 (2d Cir. 2011), (citing *Hensley v. Eckerhart*, *supra* at 433).

Here, the Court does not need to speculate what the market price would be or what fee
might have been negotiated by Plaintiff and members of the class. Consistent with the foregoing
precedents, and their Stipulation of Settlement, the Parties negotiated the fees, costs, and
expenses that Defendants would pay Class Counsel for their work on behalf of Plaintiff and
members of the class; Defendant agreed to pay $90,000.00. [Doc. 62-2, ¶10(d)]. As set forth in
Class Counsels' affidavits, the Parties' negotiated fees and expenses are below the lodestar
amounts requested. [Horn Affid., ¶¶ 11-19; Arleo Affid., ¶10; Kleinman Affid., 8]. The result is
an amount that reflects a negotiated compromise reached through extensive arm's-length
bargaining by informed parties. It was only after the Parties negotiated the other terms and
provisions of the settlement that they addressed the issue of attorney's fees, costs, and expenses.

Further, the negotiated attorney's fees and costs payable by Defendant does not reduce
the amount of the Class Settlement fund or damages awarded to Plaintiff. Nor does the
negotiated attorney's fees and costs reduce the benefits to the class in any way. Moreover,
Defendants are represented by skilled lawyers, and do not need (and has not sought) protection
from the Court for the results of their own negotiations regarding the amount of the fees and
expenses they have agreed to pay Class Counsel.

**C.      Under the Lodestar Standard, Class Counsel are Entitled to Full Compensation for Their Work in This Litigation**

"In order to encourage able counsel to undertake FDCPA cases, as Congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases....Paying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law." *Tolentino v. Friedman*, 46 F.3d 645, 652-653 (7th Cir. 1995).

## V.      <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests the Court grant his motion and enter the attached Final Approval Order.

Respectfully submitted this 3rd Day of July 2013.

*s/ William F. Horn*

William F. Horn, Esq. (WH-1070)
LAW OFFICE OF WILLIAM F. HORN
188-01B 71st Crescent
Fresh Meadows, NY 11365
Telephone: (718) 785-0543
Facsimile:  (866) 596-9003

Robert L. Arleo, Esq. (RA-7506)
LAW OFFICE OF ROBERT L. ARLEO
380 Lexington Avenue, 17th Floor
New York, NY 10168
Telephone: (212) 551-1115
Facsimile:  (518) 751-1801

Abraham Kleinman, Esq. (AK-6300)
KLEINMAN, LLC
626 RXR Plaza
Uniondale, NY 11556-06265
Telephone: (516) 522-2621
Facsimile: (888) 522-1692
E-Mail: akleinman@kleinmanllc.com

*Attorneys for Plaintiff, Yekusiel Sebrow, and all others similarly situated*